**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **WANDA HAMILTON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 13-2932** |
| | : | |
| **LMM MANAGEMENT, INC., et. al,** | : | |
| **Defendants.** | : | |
| | : | |

## M E M O R A N D U M

**Stengel, J.**                                                  **August 14, 2014**

The plaintiff requests leave to file a third amended complaint in this consumer class action. She intends to add factual allegations, which relate to information she received during discovery. For the reasons stated below, I will grant the plaintiff's motion.

## I.     BACKGROUND

Plaintiff Wanda Hamilton claims she paid an outstanding debt owed to CACH, Inc. after receiving a letter from "McGuigan Law Office, LLC" on June 4, 2012. Square Two is the parent company of CACH, which has no employees of its own. The plaintiff alleges that "McGuigan Law" was in fact LMM Management, a collection agency owned by Defendant Lawrence Weil, not a law firm. LMM Management collected debts almost exclusively owed to CACH.

Plaintiff Wanda Hamilton filed her complaint on May 28, 2013 against defendants McGuigan Law Office, LMM Management, Lawrence Weil, and CACH, alleging a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692e, §1692e(3), and § 1692e(10).[1] On August 23, 2013, she filed an amended complaint, adding Square Two as a defendant.[2] The amended complaint also added class allegations, including two classes, and a second count of restitution and disgorgement related to Class B.[3]

On September 26, 2013, McGuigan Law filed a suggestion of bankruptcy in this court, and the case was placed in suspense. After a telephone conference with counsel for the parties and this court, I allowed the plaintiff leave to file a second amended complaint, which removed McGuigan Law as a party. Subsequently, the stay on the case was lifted.[4]

On November 1, 2013, the plaintiff filed a Second Amended Complaint (SAC), dropping McGuigan Law as a defendant. On November 18, 2013, the remaining defendants answered this complaint. On December 30, 2013—five days before the scheduled Rule 16 conference—the defendants filed a Rule 60(b) motion, asking the

---

[1] See Compl., Doc. No. 1 at 5.

[2] See Doc. No. 2.

[3] See Am. Compl., Doc. No. 2 at 5-10.

[4] On September 1, 2013, McGuigan Law Office filed a Chapter 7 bankruptcy petition in the Eastern District of Pennsylvania (Bankr. E.D. Pa. 13-17633). On October 1, 2013, the plaintiff requested that the automatic stay be lifted because the non-debtor defendants were not entitled to the automatic stay. A telephone conference of counsel for the parties with this court was held on October 25, 2013. McGuigan Law argued that all of the defendants were so intertwined such that the bankruptcy proceeding will have an effect on the other defendants. The plaintiff agreed not to proceed with her claims against McGuigan Law and to submit a second amended complaint. The court agreed to this resolution with no objection from the defendants. On October 29, 2013, this court entered an Order returning this case to the active docket and granting the plaintiff's request to amend her complaint.

court to again stay the case.[5] I denied this motion for reconsideration.[6] On May 5, 2014, the court entered an amended scheduling order at the request of the parties, making all fact discovery due by August 1, 2014.[7] On May 23, 2014, the plaintiff filed a motion for leave to file a third amended complaint, which the defendants oppose.[8]

The claims in the proposed Third Amended Complaint (TAC) are the same as those found in the First Amended Complaint and in the Second Amended Complaint: Count I: violation of the FDCPA for all class plaintiffs, and Count II: Restitution and Disgorgement for Class B plaintiffs. The class definitions of the two classes also essentially remain the same. No new cause of action is pled, and no new defendant is being added.

The plaintiff seeks to add more factual information to the complaint, which she has received during discovery. This information is intended to "round out and supplement" the plaintiff's allegations related to both the four year class period for Class B and the details of the agreement between the defendants to collect debts under the guise of a law firm. Most of the added information relates to a licensing agreement between Square Two (formerly known as Collect America) and LMM Management, from January

---

[5] See Doc. No. 27.

[6] See Doc. No. 37 and 38.

[7] See Doc. No. 40.

[8] Around this same time, plaintiff's counsel alerted the court to difficulties in receiving discovery from the defendants. Plaintiff's counsel attempted to resolve the disputes without court intervention. The plaintiff eventually filed two motions related to discovery in mid-June, when counsel for the parties could not reach a resolution. I referred these motions to the Honorable Magistrate Judge Henry Perkin. See Doc. No. 45, 47, and 48.

8, 2009 until at least April 2013.[9] This agreement offers evidence that a "supervising attorney" would be hired as an onsite-manager of LMM Management, a licensee of Square Two/Collect America.[10] Thomas Landis served in this role from 2009 to 2011.[11] Michael McGuigan then contracted to become the supervising attorney from 2011 until 2013.[12] Lawrence Weil also testified that Square Two's "model was to collect under an attorney name."[13] The specifics of the legal relationships between the defendants were previously unknown to the plaintiff when she filed her SAC.

The plaintiff also seeks to add more specific information about the amount of amount of money collected by LMM on behalf of SquareTwo—information that also was previously unknown to the plaintiff. The Class B definition would be amended to reflect the amount of money collected by LMM Management under both "supervising attorneys." The plaintiff alleges that before she took the deposition of Mr. Landis, she was unable to confirm that SquareTwo and LMM Management used his name to operate the same scheme they had under Michael McGuigan's name.

---

[9] See Proposed Third Am. Compl., Doc. No. 41, Ex. 1 at Ex. A and Doc. No. 42, Ex. A; "SquareTwo Financial, Formerly Collect America, Unveils New Name and Look," Dec. 16, 2009, http://www.squaretwofinancial.com/corporate-news-6/ (press release outlining change of name).

[10] The information the plaintiff received prior to discovery contradicted this arrangement. McGuigan testified during his bankruptcy hearing that he had hired LMM to run collections when the agreement between SquareTwo and LMM clearly shows it was the other way around. See McGuigan Statement, November 4, 2013, Doc. No. 58, Ex. D at 8-9.

[11] Weil testified that Landis was considered a 1099 employee. See Doc. No. 42, Ex. B. at 99-100. See also Affidavit of Plaintiff Thomas Landis (from Landis v. LLM Financial Solutions, LLC, et al., May Term 2012, No. 3667), Doc. No. 42, Ex. D.

[12] See Doc. No. 42, Ex. A at 16 to 22.

[13] See Doc. No. 42, Ex. B at 41.

## II.    DISCUSSION[14]

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading at any time by leave of the court, which "shall be freely given when justice so requires." If the movant has at least colorable grounds for relief, justice requires allowing amendments unless the movant is guilty of undue delay or bad faith, the amendment would unduly prejudice the opposing party, or the amendment would be futile. Foman v. Davis, 371 U.S. 178 (1962); Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990); Air Products & Chem., Inc. v. Eaton Metal Prod. Co., 256 F. Supp.2d 329, 332 (E.D. Pa. 2003). "[T]he grant or denial of a motion for leave to amend, pursuant to Fed.R.Civ.P. 15(a), is within the sound discretion of the district court; it will be reversed only for an abuse of discretion." Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm., et al., 573 F.2d 820, 823 (1978)(citations omitted).

The majority of the defendants' arguments do not address the purpose of this motion: whether amendment is appropriate. They either attack the legal viability of the plaintiff's existing claims or challenge the adequacy of the plaintiff's class claims under Rule 23. The defendants did not previously move to dismiss the plaintiff's claims, and the time for such a motion and such arguments has long past. A motion for class certification has not yet been filed, since discovery has not closed. The defendants' terse arguments

---

[14] The defendants again allege improper service of the initial complaint. As I stated in the memorandum regarding the motion to stay, this objection is waived. See McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 194-95 (3d Cir. 1998)("[I]f a Rule 12 motion is made and the defendant omits its objection to the timeliness or effectiveness of service under Rule 12(b)(5), that objection is waived."); Defendants' Answers, Doc. No. 18 and 19; Memorandum Denying Motion to Stay, Doc. No. 38 at 1 n. 1.

regarding class certification are premature.[15] I will address only those areas of argument that relate to amendment.[16]

### a.  No Prejudice to the Defendants Shown

I find nothing to indicate undue delay or bad faith in the filing of the plaintiff's motion.[17] Michael McGuigan was deposed on March 11, 2014, Lawrence Weil on February 27, 2014, and a SquareTwo designee on February 26, 2014. LMM's bookkeeper Mettu Debral was deposed on May 12, 2014. Thomas Landis was deposed on May 6, 2014. The information being added to the complaint relates primarily to Landis' role in the collection scheme. The motion to amend was filed just over two weeks after he was deposed.

The defendants argue that the plaintiff was aware of Thomas Landis prior to his deposition yet did not include him in the complaint. This argument is meritless. Prior to his deposition, the plaintiff would not necessarily have had information about the details of his relationship with the other defendants. The contours of the legal relationships between the defendants would typically only be known to the defendants themselves

---

[15] The court would need to conduct a "rigorous analysis" of the class claims in order to determine whether certification under Rule 23 was appropriate. See, e.g., Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 244-45 (E.D. Pa. 2012) (quoting Landsman & Funk PC v. Skinder–Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011)).  "Discovery and full briefing on the merits of class certification are typically required to conduct this 'rigorous analysis.'" Goode, 284 F.R.D.at 245 (citations omitted).

[16] SquareTwo and CACH filed a response in opposition, while LMM Management and Lawrence Weil filed a separate response in opposition. However, the two briefs offer essentially the same reasons for their opposition—though the former brief is much more expansive in its explanation. For this reason, I will consider their arguments together.

[17] If anything, any delays in this case have been the result of the defendants' actions, as evidenced by the recent discovery disputes and previous motion for reconsideration packaged as a motion to stay.

prior to discovery.[18] As the plaintiff explained, Landis' deposition was the first substantial and reliable evidence about Landis and the use of his name as part of the defendants' collection arrangement.

Even so, delay alone is insufficient to deny an amendment. Cornell & Co., Inc., 573 F.2d at 823 (citations omitted).[19] "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." Id. I find none here. The amendment involves the addition of factual allegations, not new parties or claims. These facts are ones that the plaintiff would likely not have known—or have been able to confirm— before discovery. The defendants were well aware of this information long before the lawsuit was filed so no additional discovery on their part would necessarily be required. No dispositive motions have been filed, which would need to be rewritten. Though the information may prove to be harmful to the defendants' case, this is not the sort of prejudice that would prevent an amendment of the plaintiff's complaint. "The nonmoving party has a heavier burden than merely claiming prejudice, it must show that an unfair disadvantage or deprivation will result by allowing the amendment." In re Wellbutrin XL Antitrust Litigation, 756 F.Supp.2d 670, 681 (E.D. Pa. 2010)(citing Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous., Inc., 663 F.2d 419, 426 (3d Cir.1981)).They have failed to meet this burden.

### b. Proposed Changes to Class B Definition

[18] The defendants argue that the plaintiff had some knowledge of Thomas Landis as far back as February 19, 2013, when plaintiff's took the deposition of Michael McGuigan in another case, William Carbo v. McGuigan Law Office, 2:12-cv-06127(CMR), E.D. Pa. It was not until Landis' deposition in May 2014, however, that the plaintiff had information to confirm Landis' relationship with the other defendants in this case.

[19] See also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).

The plaintiff's SAC defines Class B plaintiffs as those who "paid money to McGuigan Law Office on account of the debt(s) being collected."[20] The TAC would redefine the second class of plaintiffs as being all Pennsylvania residents who paid funds to either "Law Office of Thomas Landis" or "McGuigan Law Office." The plaintiffs in this class would be seeking disgorgement of funds paid under this law firm guise. Like the proposed amended complaint, the plaintiff's previous complaints defined this class according to the statutory limit on restitution and disgorgement claims—including those residents making payment within the four years prior to the complaint's filing. The plaintiff explains that discovery further clarified the structure of the alleged law firm guise. As the agreement between SquareTwo and LMM Management shows, the "supervising attorney" was an interchangeable part of the collection scheme. Neither Landis nor McGuigan were requisite parties to that agreement. Their relationship with the other defendants was governed by a separate contract. From what the plaintiff has presented, it would not matter whether a class member received a letter from Landis or McGuigan. The plaintiff's theory is that the defendants' use of law firm letterhead to collect its debts during the four years prior to the filing of the complaint was illegal.

The defendants argue that the plaintiff would not have standing to bring this claim because she only had received a letter from McGuigan Law Office and not from the Law Office of Thomas Landis.[21] "To have standing to sue as a class representative it is

---

[20] See Second Am. Compl., Doc. No. 18 at 7.

[21] The defendants also fold their merits-based arguments into this argument, claiming that the plaintiff also has no standing because she cannot legally bring an equitable claim and is barred by the doctrine of voluntary payment. These arguments are ones more properly made at the motion to dismiss stage. The amendments the plaintiff seeks

essential that a plaintiff must be a part of that class, that is, he must possess the same

interest and suffer the same injury shared by all members of the class he represents."

Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 360 (3d Cir. 2013)(quoting Schlesinger v.

Reservists Committee to Stop the War, 418 U.S. 208, 216 (1974)).[22] I find nothing at this

point which would render the plaintiff's standing flawed by the redefinition of the class.

Like the other class members, Ms. Hamilton received a letter from McGuigan Law Office

during the previous four years prior to the complaint's filing and paid funds to

"McGuigan Law Office" or the "Law Office of Thomas Landis" during the four years

prior to the complaint's filing. As the amendments make clear, in line with the

information produced during discovery, the operation run by the defendants was the same

whether McGuigan's name or Landis' name was on the letterhead. The key to the

plaintiff's and Class B's claim is that the defendants were unjustly enriched at the

expense of the plaintiff and the class members as a result of their illegal collection

operation. What has been pled in the proposed TAC, which is very similar to what has

already been pled in the SAC, provides a basis for the plaintiff's claim.

---

are factual ones, not legal ones. Regardless of whether the request for an amendment is granted or not, this claim would remain a part of the complaint. The defendants may renew these arguments at a later time, but they are not appropriate for the purposes of this motion.

[22] The defendants also argue that the plaintiff would not be an adequate representative of Class B under Rule 23(a) because she did not receive a letter from Landis. While this argument overlaps some with the standing argument, her adequacy as a class representative is an issue better determined on a motion for class certification than this motion, as I've previously mentioned. This argument is also premature, since discovery is still ongoing. See, e.g., Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 680 (E.D. Pa. 2011); Korman v. The Walking Co., 503 F.Supp.2d 755, 762–63 (E.D.Pa.2007).

### c.  Lack of Subject Matter Jurisdiction

The defendants also argue that the amendment would be futile because the court may not have subject matter jurisdiction in this case. They claim the plaintiff's action is moot simply because SquareTwo made a settlement offer on February 11, 2014.[23] According to the defendants, this offer would be the most the plaintiff and the class could recover. The plaintiff never accepted this offer. No motion for class certification has yet been filed in this case. The defendants offer no case law to support this argument.

The Third Circuit has recognized that there is a tension between Rule 23 and Rule 68. Weiss v. Regal Collections, 385 F.3d 337, 339 (3d Cir. 2004). Allowing a Rule 68 offer made to a class representative before a motion for class certification to moot the action could "frustrate Congress's explicit directive that the FDCPA be enforced by private attorney generals acting in a representative capacity." Id. at 345.[24] "Alleged violators of federal law would be allowed to tender the statutory amount of damages to a named plaintiff, derailing a putative class action and frustrating, the goals and enforcement mechanism of the FDCPA." Id.

In addition, the offer made to the plaintiff and the class is not necessarily a complete offer. The plaintiff has not received discovery regarding the defendants' net

---

[23] I will note that this is the first the court has been made aware of this offer and/or the possible divestment of jurisdiction. Long after this offer was made in February, the parties stipulated to amending the scheduling schedule in May, which I approved. See Doc. No. 40. Presumably the court would not have been able to enter the stipulated order if it no longer had jurisdiction.

[24] See, e.g., Smith v. NCO Fin. Sys., 257 F.R.D. 429 (E.D. Pa. 2009)(striking a Rule 68 offer of judgment made prior to class certification "to prevent it from undermining the class action device"); Zeigenfuse v. Apex Asset Mgmt. LLC, 239 F.R.D. 400, 403 (E.D. Pa. 2006)(same).

worth, which is needed to properly calculate damages under the FCDPA.[25] The offer also did not account for the damages the plaintiff and class seek in Count II because the defendants believe this count is legally flawed. Whether this count warrants relief is a question which has not yet been decided by this court. For these reasons, I am not convinced that this unaccepted offer alone divests this court of subject matter jurisdiction, thereby making the amendment futile.[26]

## III.   CONCLUSION

For the reasons discussed above, I will grant the plaintiff's motion for leave to file a third amended complaint.

An appropriate Order follows.

---

[25] See 15 U.S.C. § 1692k(a)(2)(B) (establishing maximum damages in class actions under the FDCPA as "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). SquareTwo offered $182,840.00, which it claimed was $500 more than one percent of its net worth. See Doc. No. 51, Ex. A.

[26] The language of Rule 68 also contradicts the defendants' argument. "Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs." Fed. R. Civ. P. 68(b). See Advisory Notes for Rule 68(b).