IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WANDA HAMILTON, <br>     Plaintiff, <br><br> v. <br><br> LLM MANAGEMENT, INC., et. al, <br>     Defendants. | CIVIL ACTION <br><br> No. 13-2932 |

FILED
FEB 11 2016
MICHAEL E. KUNZ, Clerk
By_____Dep Clerk

**M E M O R A N D U M**

**Stengel, J.**                                                                                   February 10, 2016

    The defendants ask this Court to grant their Motion for Summary Judgment in the plaintiff's action brought under the FDCPA. The plaintiff contends that the defendants violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq., by sending her collection letters on law firm letterhead. Specifically, the plaintiff asserts that the law firm whose letterhead was used for her collection letter was a "sham law firm," one that did not truly exist. Therefore, the plaintiff argues that she is entitled to damages under the FDCPA. Plaintiff further asserts that under Pennsylvania law, she is entitled to repayment of the funds that she paid the defendants as a result of what she contends were unlawful activities.

    The defendants move for summary judgment on three grounds. They argue that: (1) plaintiff's claim that the two firms were "sham" operations fails as a matter of law; (2) plaintiff's second cause of action, which they argue sounds in "restitution and disgorgement," fails as a matter of law; and (3) plaintiff's claims fail under the Voluntary

1

Payment Rule. See generally Doc. No. 70. For the following reasons I will grant the defendants' motions for summary judgment.[1]

## I. BACKGROUND

The plaintiff, Wanda Hamilton, claims she paid an outstanding debt owed to CACH, LLC ("CACH") after receiving a letter from the "McGuigan Law Office, LLC" on June 4, 2012. Square Two Financial Corporation ("Square Two") is the parent company of CACH, which has no employees of its own. The plaintiff alleges that the McGuigan Law Office was not a law office or firm, but rather was LMM Management, LLC ("LMM"), a collection agency owned by Lawrence Weil. LMM Management collected debts almost exclusively owed to CACH.

### A. Procedural Background

On May 28, 2013, the plaintiff filed her Complaint against defendants LMM, the McGuigan Law Office, CACH, and Lawrence Weil. See generally Compl. The plaintiff's Complaint alleged various violations of the FDCPA. See id. On August 23, 2013, the plaintiff filed an Amended Complaint, adding Square Two as a defendant. See generally Am. Compl. The Amended Complaint also added class allegations, including two classes, and a second count of restitution and disgorgement related to the second class.

On September 26, 2013, one of the named defendants, the McGuigan Law Office, filed a suggestion of bankruptcy in this court and this case was placed in suspense. See

---

[1] On October 7, 2014, plaintiff filed a motion for class certification, seeking to represent two separate classes of individuals. (Doc. No. 71). Because I am granting the defendants' motions for summary judgment, I will deny the plaintiff's pending motion for class certification as moot.

2

Doc. Nos. 8 & 9. After a telephone conference with counsel for the parties, I allowed the plaintiff leave to file a second amended complaint, which removed the McGuigan Law Office as a party. Doc. No. 16. Subsequently, the stay on the case was lifted.

On November 1, 2013, the plaintiff filed her Second Amended Complaint that dropped the McGuigan Law Office as a defendant. See generally Second Am. Compl. On November 18, 2013, the remaining defendants answered this complaint. See Doc. Nos. 18 & 19. On December 30, 2013—five days before a scheduled Rule 16 conference—the defendants filed a Rule 60(b) motion, asking the Court to once more stay the proceedings in the case. Doc. No. 27. I denied this motion for reconsideration, finding that my Order reinstating the case, Doc. No. 16, was not a final Order subject to Rule 60(b). Doc. Nos. 38 & 39. On May 5, 2014, the Court entered an Amended Scheduling Order at the parties' request and rendered all fact discovery due by August 1, 2014. Doc. No. 40. On May 23, 2014, the plaintiff filed a motion for leave to file a third amended complaint. Doc. No. 41. I granted this motion and on August 20, 2014, the plaintiff filed her Third Amended Complaint (the "TAC"). See Doc. No. 41; Third Am. Compl.

The TAC contains two counts. See generally Third Am. Compl. Count I, which the plaintiff seeks to advance on behalf of individuals who meet the definition of Class A,[2] alleges that the defendants "violated the Fair Debt Collection Practices Act by using false, deceptive, or misleading representations or means in connection with the collection

---

[2] The plaintiff has defined Class A to include "All persons with Pennsylvania addresses who were sent one or more collection letters on the letterhead of McGuigan Law Office, LLC in an attempt to collect a debt alleged due to CACH that arose primarily for personal, family or household use in the period commencing one year before the filing of the Complaint in this action, through the date of class certification." See Third Am. Compl. at ¶68.

of any debt, in violation of 15 U.S.C. § 1692e, § 1692e(3) and § 1692e(10), and unfair and unconscionable collection practices, § 1692f." Id. at ¶ 73. Count II, which the plaintiff seeks to advance on behalf of individuals in Class B,[3] alleges that the funds that the defendant received during the class period were wrongfully gained by the defendants. Id. at ¶82. Therefore, the plaintiff contends that the defendants must disgorge all monies that were received from the plaintiff and other members of the class, should it be certified. Id. at ¶ 83.

On October 7, 2014, defendants CACH and Square Two filed for summary judgment. See Doc. No. 70. The plaintiff filed her response in opposition on November 4, 2014. See Doc. No. 72. While initially defendants LMM and Lawrence Weil did not file a motion for summary judgment, on November 25, 2015, they filed a Motion for Joinder with the defendants CACH and Square Two's Motion for Summary Judgment. See Doc. No. 82. I granted defendant's LMM and Lawrence Weil's motion on December 15, 2015. See Doc. No. 84. The defendants' Motion for Summary Judgment is now ripe for adjudication.

B. **LMM and Square Two Entered Into an Agreement**

Defendant Weil owned and controlled LMM.[4] See Weil Dep. 43:4–6, Feb. 27, 2014. In January 2009, LMM and Square Two entered into an Agreement. Doc. No. 71-2. Under the Agreement, LMM was to set up a collection agency franchise to collect

---

[3] Class B is defined in the Third Amended Complaint as "[a]ll persons with Pennsylvania addresses who paid funds to "Law Office of Thomas Landis" or "McGuigan Law Office" as reflected on the Defendants' records for a debt that arose primarily for personal, family or household use in the period commencing four years before the filing of the Complaint in this action, through the date of class certification." Third Am. Compl. at ¶ 69.
[4] Mr. Weil owned and controlled LMM with his wife, who is not a named party in any of plaintiff's complaints. See Weil Dep. 43:4–6, Feb. 27, 2014

4

consumer accounts that CACH claimed were due. Id. The Agreement required LMM to obtain a supervising attorney. Id at § 1.10.

### C. LMM Hired Thomas Landis as Supervising Attorney

In April of 2008, Larry Weil interviewed Thomas Landis for the position of supervising attorney.[5] Landis Dep. 18:16–19:10, May 6, 2014. Mr. Weil provided Mr. Landis with the overhead, employees and supplies he needed to assist LMM's collection activities. Landis Dep. 27:22–28:16. In return, Mr. Landis was paid a flat salary. Landis Dep. 28:17–19. Ultimately, LMM began to collect debts under Mr. Landis' name, using the name "Law Office of Thomas Landis." Landis Dep. 30:24–31:1. LMM terminated Mr. Landis in October, 2011. Landis Dep. 42:22–41:21.

Although Mr. Landis testified that he considered LMM to be his one and only client, see Landis Dep. 26:13–17, in May 2012, he sued LMM and Weil in state court contending that LMM and Weil, among others, failed to pay him in accordance with Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S.§ 260.2. See generally Doc. No. 71-17. He sought in excess of $50,000 in damages. Id. at 13.

### D. LMM Hired Michael McGuigan

LMM hired Michael McGuigan as a supervising attorney in late 2011.[6] McGuigan Dep. 58:7–10, Mar. 11, 2014. Although employed by LMM, Square Two was involved in Mr. McGuigan's hiring. See Doc. No. 71-7. Mr. McGuigan served as the

---

[5] Initially, Mr. Landis was employed by APM financial, another company Mr. Weil owned. Doc. No. 70-6, 23:18-19. In June of 2010, Mr. Landis became an LMM employee. Id. at 25:17-20.
[6] It appears from the record that Mr. McGuigan had a dual role for LMM, working both for Oxford Law and the McGuigan Law Office. See McGuigan Dep. 19:17–22:12. Both were entities associated with LMM's collection efforts. Oxford Law has not been named as a defendant in any of the plaintiff's complaints.

managing member for the McGuigan Law Office. McGuigan Dep. 19:24–20:1. LMM paid Mr. McGuigan $60,000 per year. Weil Dep. 168:12–14. Mr. McGuigan was not required to pay for any overhead expenses associated with his position as supervising attorney. McGuigan Dep., 50:12–52:8. Rather, these expenses were covered by either LMM or CACH. McGuigan Dep. 52:9–19. Further, although Mr. McGuigan signed an agreement that acknowledged his role as supervising attorney, he never submitted to CACH or to Square Two an engagement letter on McGuigan Law Office letterhead.[7] See McGuigan Dep. 42:20–23.

In late 2011, collection letters were first sent out on the letterhead of the "McGuigan Law Office." McGuigan Dep. 60:21–61:5. At the same time, collection agents began to call consumer debtors and identify themselves as calling from the "McGuigan Law Office." McGuigan Dep.192:21–194:2. While Mr. McGuigan did not review each letter that was sent to a consumer, he did review the template that was used.[8] McGuigan Dep. 117:17–21; 118:7–9.

### E. The Plaintiff Received Dunning Letters from Defendant

In June 2012, the plaintiff received a collection letter, also known as a collection dun or dunning letter, from the McGuigan Law Office. See Doc. No. 71-18. The letter, dated June 4, 2012, was on McGuigan Law Office letterhead. Id. It stated that "this office represents the above named creditor." Id. It then demanded full payment on the outstanding debt. Id. In bold lettering in the middle of the page was the following

---

[7] The record does not demonstrate that an engagement letter on any letterhead was ever submitted.
[8] Mr. McGuigan noted that he used as a template the letters used by the Law Office of Thomas Landis and Oxford Law, two other entities that also were affiliated with LMM's collection efforts. McGuigan Dep. 119:24-120:1, Mar. 11, 2014.

statement: "**[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account(s).**" Id. (emphasis in original). The letter further noted that "**[t]his communication is from a debt collector. This is an attempt to collect a debt and any information, (sic) obtained will be used for that purpose.**" Id. (emphasis in original). Similar letters were sent to 11,670 individuals with Pennsylvania addresses from May 28, 2012 through September 13, 2013. Abrahams Aff. ¶ 5, Oct. 2, 2014.

Although Ms. Hamilton did not pay the debt at that time, after receiving the letter, Ms. Hamilton contacted the McGuigan Law Office. Hamilton Dep. 106:12–15; 272:6–11, Mar. 19, 2014. Ms. Hamilton did so "because it appeared that there was an attorney involved" who "had the ability to take [her] to court." Hamilton Dep. 272:12–17. Further, because the letter was on law firm letterhead, Ms. Hamilton viewed it as a "threat of being sued," and therefore, decided to contact the law office. Hamilton Dep. 273: 20–274:5. Although Ms. Hamilton received two additional letters from the McGuigan Law Office in July 2012, she did not pay her debt. Hamilton Dep. 109:24–110:21. Each time, however, she contacted the McGuigan Law Office in response. Hamilton Dep. 110:12–13.[9]

---

[9] Ms. Hamilton also testified that in October 2012, she received a phone call from the McGuigan Law Office. Hamilton Dep. 97:17–98:6. When she called the McGuigan Law Office back, she spoke to a man named Michael McKernan, who identified himself as a paralegal for the Law Office. Hamilton Dep. 99:1–9. Mr. McKernan told Ms. Hamilton that Mr. McGuigan did not speak to debtors. Hamilton Dep. at 98:6–8. After Mr. McKernan demanded payment from Ms. Hamilton, he proceeded to "belittle" and "degrade" Ms. Hamilton. Hamilton Dep. 98:10–16; 99:9–10. According to Ms. Hamilton, "it was one of the most distressing" telephone conversations she had ever had. Hamilton Dep. at 101:3–6. Ms. Hamilton, however, has not alleged that the defendants violated the FDCPA by engaging in these collection tactics.

7

Ultimately, in December 2012, Ms. Hamilton paid $12,000 to settle a debt she acknowledged totaled approximately $20,000. Hamilton Dep. 130:11–17; 130:24–131:2. Ms. Hamilton has never disputed that she owed the debt. Hamilton Dep. 122:16–19.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by

8

making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

Ms. Hamilton brings Count I of her suit under the FDCPA. Congress noted in the preface to the FDCPA that "[t]here is abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). These "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. Therefore, Congress intended the Act "to eliminate abusive debt collection practices by debt collectors . . . [and] insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e); see also

Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008) (discussing the legislative history of the FDCPA).

Generally, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. While the Act provides a list of prohibited actions, which include "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney," Id. at §1692e(3), this list is non-exclusive.[10]

### A. The Defendants are Entitled to Summary Judgment on Count I of the Plaintiff's TAC

As a threshold matter, I should note that the plaintiff advances a novel legal argument. Essentially, the plaintiff does not argue that the content of the collection letters violates the FDCPA. Instead, she argues that it is the use of the law firm letterhead that is the deceptive practice as she contends that the two law firms at issue – the Law Office of Thomas Landis and the McGuigan Law Office – were "bogus" law firms. See e.g., Third Am. Comp. ¶ 57 ("Defendants Square Two and CACH knew of the sordid, deceptive arrangement whereby LMM would collect "CACH" debts on Square Two's behalf through the powerful use of a 'law firm' façade."). Thus, the plaintiff argues that it is the use of the letterhead that "represents or implies that a lawyer has reviewed the file, made appropriate inquiry, and has exercised professional judgment in the sending of the collection letter, and that the letter indeed came from a Pennsylvania law firm." Pl.'s Resp. Opp'n Summ J. at 17.

---

[10] In her TAC, Ms. Hamilton also contends that the defendants violated the act by using "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" and through the use of unfair or unconscionable collection practices. 15 U.S.C. § 1692e(10),1692f.

I have been unable to find, and the plaintiff does not cite to, any cases in which a court has found such an argument to be persuasive. Furthermore, under the Third Circuit's reasoning in <u>Lesher v. Law Offices of Mitchell N. Kay, PC</u>, 650 F.3d 993 (3d Cir. 2011), the content of the letter the plaintiff received appears to comply with the FDCPA's requirements. Therefore, because there is no legal basis for the plaintiff's claim, I will grant the defendants' Motions for Summary Judgment.

In <u>Lesher</u>, the Third Circuit noted that a court must "analyze communications from lenders to debtors from the perspective of the 'least sophisticated debtor.'" <u>Id.</u> at 997 (citing <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450, 453 (3d Cir. 2006)). While this is a low standard, it still "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." <u>Id.</u> (internal citation and quotation marks omitted). Applying this standard, the court held that a collection letter that was on attorney letterhead but that contained a disclaimer that "at this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account," on the back did not comply with the Act. <u>Id.</u> At the same time, however, the court noted that it

> need not decide whether an attorney debt-collector who sends out a collection letter on attorney letterhead might, under appropriate circumstances, comply with the strictures of the Act by including language that makes clear that the attorney was not, at the time of the letter's transmission, acting in any legal capacity.

11

Id.; see also Greco v. Traunder, Cohen & Thomas, L.L.P., 412 F.3d 360, 365 (2d Cir. 2005) (holding that a collection letter on attorney letterhead that stated on the front "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account" did not violate either Section 1962d or Section 1962e(3) of the FDCPA).

Courts within this circuit have addressed whether a collection letter on attorney letterhead that contains a disclaimer on its face regarding the level of attorney involvement violates the FDCPA. In Davis v. Lyons, Doughty & Veldhuis, P.A., 855 F. Supp. 2d 279 (D. Del. 2012), the plaintiff received a one-page collection letter on a law firm's letterhead. Id. at 281. The plaintiff argued, much like Ms. Hamilton argues here, that the defendant's use of law firm letterhead falsely implied that an attorney was involved and as such, sent the message that the "price of poker [had] gone up." Id. at 283 (citing Lesher, 650 F.3d at 223). The court, however, held that the disclaimer on the front of letter head that stated "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account" was sufficient to satisfy the FDCPA. Id.; see also Eddis v. Midland Funding, L.L.C., No. CIV. 11-3923 JBS/AMD, 2012 WL 664812, at *9 (D.N.J. Feb. 28, 2012) (finding that the use of the disclaimer "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account" on the front of a collection letter sent on law firm letterhead to be sufficient to comply with the FDCPA).

Here, the plaintiff received a letter that contained the exact same language that was used in Lesher, Davis, and Eddis. See Doc. No. 71. Unlike in Lesher, however, the

defendants placed this letter in bold lettering in the middle of the page. See Doc. No. 71-18. The defendants' use and placement of this language makes it clear to the average consumer that the attorney was not, at the time of the letter's transmission, acting in any legal capacity, as Lesher requires. As such, I find that the letters that the plaintiff and others received, were complaint with the FDCPA and summary judgment must be granted to the defendants in the instant action.[11]

## IV. CONCLUSION

For the foregoing reasons, I will grant the defendants' Motion for Summary Judgment with regards to her FDCPA claim (Count I) with prejudice. Because pursuant to 28 U.S.C. § 1367(c)(3), I decline to assert supplemental jurisdiction over the plaintiff's state law claims contained in Count II of the complaint, I will dismiss Count II with leave to re-file her claims in state court. I also will deny the plaintiff's motion for class certification as moot.

An appropriate Order follows.

---

[11] The plaintiff's second count is a state law claim for restitution and disgorgement. See Doc. No. 71 at 31; see also Third Am. Compl. ¶¶ 80-83. Because I find that the plaintiff does not have a claim under the FDCPA, I decline to assert supplemental jurisdiction over Count II of her Third Amended Complaint and will dismiss this claim with leave to the plaintiff to refile in state court. See 28 U.S.C. § 1367(c)(3); see also McCarthy v. Eastburn & Gray, P.C., No. CIV. A. 08-CV-1011, 2009 WL 1812793, at *3 (E.D. Pa. June 24, 2009) (declining to assert supplemental jurisdiction over the plaintiff's remaining state law claims pursuant to 28 U.S.C. §1367 after granting the defendant summary judgment with regards to the plaintiff's federal claims).